UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE DOE, individually and
on behalf of her minor son,                    CIVIL ACTION
JOHN DOE


VERSUS                                         NO: 11-467


JERRY DANTIN, ET AL                            SECTION: "A" (1)


## ORDER AND REASONS

Before the Court is a **Motion to Dismiss (Rec. Doc. 34)** filed
by Defendants, the Town of Grand Isle, David Carmadelle, and Euris
Dubois.  Plaintiffs, Jane Doe, and her minor son, John Doe, oppose
the motion.[1]  The motion, set for hearing on February 26, 2014, is
before the Court on the briefs without oral argument.  For the
reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN
PART**.

## I.   BACKGROUND

This case concerns an alleged cover-up by the mayor of Grand
Isle and the Grand Isle Police Department in investigating a
felony.  Defendant David Carmadelle ("Carmadelle") is the mayor of
the Town of Grand Isle and a neighbor of John Doe's father.  At the

---

[1]Plaintiffs identify themselves by these pseudonyms in order
to protect their identities given that this case concerns
allegations of child molestation.  All Defendants are aware of
Plaintiffs' true identities.

time of the incident, Defendant Jerry Dantin ("Dantin") had been dating Carmadelle's mother.  The complaint alleges that on March 30, 2010, Jane Doe's son, John Doe, informed her that Dantin had sexually molested him while visiting his father.  In response, Jane Doe told John Doe's father about the sexual molestation.  John Doe's father called Carmadelle on March 31, 2010 to inform him of the allegations.  Carmadelle allegedly told John Doe's father that he would report the incident to the Grand Isle Police Department, but pleaded with John Doe's father to wait until after Easter.

By Monday, April 5, 2010, following Easter, Carmadelle still had not reported the incident.  Jane Doe called Carmadelle on April 5, 2010, but was unable to reach him.  The next day, Jane Doe reported the matter to the Grand Isle Police Department.  Defendant Euris Dubois ("Dubois"), the Chief of the Grand Isle Police Department, allegedly accused Jane Doe of lying.  Carmadelle then arrived at the police station and apologized to Jane Doe for not returning her call.  Carmadelle offered to pick up Dantin and drive him to the station, which Dubois allowed.  Upon his return, Dantin was questioned by Dubois and another police officer.  Carmadelle and Jane Doe also were present during the questioning.

During questioning, Dantin initially denied molesting John Doe, but eventually stated that he would tell the truth.  At this point, Dubois read Dantin his *Miranda* rights.  Dubois attempted to

record Dantin's statement, but the tape recorder would not work. Dubois allegedly decided against getting new batteries and instructed another person in the police department to handwrite the statement.   According to Plaintiffs, Dubois ordered Dantin to continue with his statement even though the person handwriting the statement was having difficulty keeping up with Dantin.

In his statement, Dantin confessed to molesting John Doe.  He then threatened to kill himself.  While Dantin was providing his statement, Carmadelle allegedly began crying hysterically and complained of having a heart attack.  An EMS was called to examine Carmadelle while Jane Doe was left alone with Dantin.  Carmadelle did not suffer a heart attack.

Dantin was arrested and transported to a hospital for suicide watch.  He was then released into the custody of the Grand Isle Police Department for booking.   On April 7, 2010, Dantin was transferred to the Jefferson Parish Sheriff's Office jail. Plaintiffs contend that Dantin was later bailed out of jail by Carmadelle.

Plaintiffs state that they waited four months for charges against Dantin to be accepted by the Jefferson Parish District Attorney's Office.   The District Attorney's Office repeatedly informed Jane Doe that it was waiting for the Grand Isle Police Department to provide the information necessary for them to

institute charges against Dantin.  On August 20, 2010, the District Attorney's Office instituted charges against Dantin for sexual battery of a juvenile.

In the criminal proceedings, Dantin filed a motion to suppress his oral confession, which the trial court denied.  The trial court's denial of Dantin's motion was subsequently upheld by the appellate court.  Dantin's criminal jury trial was held on July 13, 2011, resulting in a hung jury.  The matter was again tried to a jury on September 22, 2011, concluding with the same result.

On February 25, 2011, Plaintiffs filed the instant lawsuit against Carmadelle, Dubois, Dantin, and the Town of Grand Isle, asserting constitutional violations under § 1983 and state law claims for intentional torts.  Specifically, Plaintiffs allege that Carmadelle, Dubois, and Dantin violated their constitutional rights by willfully obstructing the investigation for four months and by refusing to cooperate with the Jefferson Parish Sheriff's Office. Plaintiffs further allege that Dubois and the Grand Isle Police Department failed to preserve Dantin's confession in violation of their constitutional rights.

Defendants Carmadelle, Dubois, and the Town of Grand Isle filed the instant motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Carmadelle and Dubois argue that the complaint should be dismissed

4

because Plaintiffs have failed to state a cognizable cause of action and because they are entitled to qualified immunity.  In addition, Carmadelle and Dubois assert that Plaintiffs have failed to identify which constitutional rights have been violated.  The Town of Grand Isle also moves to dismiss Plaintiffs' *Monell* claim, arguing that no municipal officer or employee of the Town of Grand Isle violated Plaintiffs' constitutional rights pursuant to an official policy of the police department or the Town of Grand Isle.

In their opposition, Plaintiffs argue that they have pled sufficient facts to demonstrate that Carmadelle and Dubois violated their First Amendment right of access to the courts by intentionally failing to preserve evidence for Plaintiffs' civil claims.  Plaintiffs also contend that they have pled sufficient facts to show that Carmadelle and Dubois violated their right to Equal Protection under the Fourteenth Amendment pursuant to the "class of one" doctrine.

Plaintiffs also assert a claim for civil conspiracy under § 1983, arguing that Carmadelle and Dubois intentionally deprived them of their constitutional rights given Carmadelle's connection to Dantin.  Plaintiffs argue that Carmadelle and Dubois are not entitled to qualified immunity because they knowingly violated the law by failing to report a felony and failing to preserve Dantin's confession.  Finally, Plaintiffs assert that the Town of Grand Isle

is subject to municipal liability because Carmadelle, as the mayor, was a moving force behind the deprivation of Plaintiffs' constitutional rights.

## II.  <u>STANDARD OF REVIEW</u>

When considering a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor.[2]  In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[3] "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."[4]  Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim.[5]  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

---

[2]*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[3]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

[4]*Id.* at 555. (parenthetical in original) (quotations, citations, and footnote omitted).

[5]*Id.* at 545.

motion to dismiss."[6]   Nevertheless, a motion to dismiss under Rule 12(b)(6) is viewed with "disfavor and is rarely granted."[7]

## III. <u>DISCUSSION</u>

### A. Failure to State a Claim Against Defendants Carmadelle and Dubois

The Court first must decide whether Plaintiffs have alleged sufficient facts to demonstrate violations of their constitutional rights and whether Defendants Carmadelle and Dubois are entitled to qualified immunity.  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define the disputed facts and issues and to dispose of unmeritorious claims."[9]

In order to assert a claim under § 1983, a plaintiff must show that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was

---

[6]*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

[7]*Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

[8]Fed. R. Civ. P. 8(a)(2).

[9]*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

committed under the color of state law."[10]   However, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11]   Courts conduct a two-pronged qualified immunity inquiry, determining whether (1) defendant's conduct violated a constitutional right and (2) that right was clearly established at the time of the misconduct.[12]

In the instant case, Plaintiffs allege that their First Amendment and Fourteenth Amendment rights were violated. Plaintiffs also contend that defendants are liable for civil conspiracy under § 1983.   The parties do not dispute that Defendants Carmadelle and Dubois were acting under the color of state law for purposes of § 1983.   Nevertheless, the parties dispute whether Plaintiffs have alleged sufficient facts to demonstrate that Carmadelle and Dubois deprived Plaintiffs of their constitutional rights under § 1983.

Initially, Carmadelle and Dubois move to dismiss Plaintiffs' complaint under Rule 12(b)(6) because Plaintiffs have failed to

---

[10]*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

[11]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[12]*Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

identify which specific constitutional rights were violated by Carmadelle and Dubois.  Although it is difficult to discern which constitutional rights were violated, the complaint provides sufficient facts to put Carmadelle and Dubois on notice of Plaintiffs' claims.  Specifically, the complaint alleges that Carmadelle and Dubois deliberately hindered the arrest and prosecution of Dantin and intentionally failed to preserve Dantin's confession in violation of Plaintiffs' constitutional rights.  These facts are sufficient to apprise Carmardelle and Dubois of Plaintiffs' First Amendment claim concerning access to the courts, as well as their civil conspiracy claim.

Regarding Plaintiffs' "class of one" Equal Protection claim, the complaint alleges sufficient facts to suggest that Plaintiffs were treated differently than others because of Carmadelle's position as mayor and his connection to Dantin.  Furthermore, Plaintiffs' opposition expands on their claims for relief and identifies the specific constitutional rights which they allege to have been violated.  Given the simplified and liberal pleading standard under Rule 8, the Court finds that Plaintiffs have pled sufficient facts to place Carmadelle and Dubois on notice of the claims against them.  The Court now must decide whether Carmadelle and Dubois are entitled to qualified immunity for the alleged constitutional violations.

### 1. First Amendment Access to the Courts Claim

Plaintiffs contend that Carmadelle and Dubois violated their First Amendment right of access to the courts by destroying evidence and by hindering the investigation into Dantin's sexual misconduct. "The right of access to the courts is basic to our system of government, and it is well established . . . that it is one of the fundamental rights protected by the Constitution."[13] The Fifth Circuit has recognized the first amendment right of access to the courts, stating that it is "well established that access to the courts is protected by the First Amendment right to petition for redress of grievances."[14] The right of access to the courts must be "adequate, effective, and meaningful."[15] Thus, "[i]nterference with the right of access to the courts gives rise to a claim for relief under section 1983."[16]

In *Ryland v. Shapiro*, the Fifth Circuit ruled that the plaintiffs had sufficiently pled a claim against state prosecutors for a violation of the right of access to the courts based on allegations that the state prosecutors had intentionally delayed

---

[13]*Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983).

[14]*Id.* at 972 (quoting *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979)).

[15]*Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)).

[16]*Id.*

and interfered with their right to institute a wrongful death suit by preventing a full investigation into the cause of their daughter's death and concealing the cause of her death for eleven months.[17]   Moreover, in *Crowder v. Sinyard*, the Fifth Circuit elaborated on the holding in *Ryland* as follows:

> *Ryland* stands for the proposition that if state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled, they may have committed a constitutional violation.[18]

Thus, in *Ryland* and *Crowder*, the Fifth Circuit recognized that the right of access to the courts is implicated when the ability to file suit is delayed or blocked entirely.[19]

In *Chrissy F. v. Mississippi Department of Public Welfare*, the Fifth Circuit expanded on the reasoning in *Ryland* and *Crowder* and found that the right of access to the courts is impaired when the state fails to report allegations that a child has been sexually

---

[17]*Id.* at 969, 973.

[18]*Crowder v. Sinyard*, 884 F.2d 804, 812 (5th Cir. 1989), *abrogated by Horton v. California*, 496 U.S. 128 (1990).

[19]*See Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (discussing Fifth Circuit precedent from *Ryland* and *Crowder*).

abused.[20]   In *Chrissy F.*, a child, through her guardian ad litem, filed suit against several state employees for failure to report, investigate, or take any action in response to her allegations of sexual abuse.[21]  The Fifth Circuit reasoned that the alleged failure to report allegations of sexual abuse, if proved, would violate the plaintiff's constitutional rights given that such conduct effectively blocked the plaintiff's access to the courts.[22]

The Court finds that Defendants Carmadelle and Dubois are not entitled to qualified immunity on Plaintiffs' First Amendment claim. Pursuant to *Ryland*, *Crowder*, and *Chrissy F.*, Plaintiffs' First Amendment right of access to the courts was clearly established at the time of the alleged violation.

As in *Ryland* and *Crowder*, Plaintiffs allege that state actors, Carmadelle and Dubois, intentionally delayed and interfered with their right to bring a civil suit for damages by concealing evidence of Dantin's confession.  Moreover, Dantin's alleged confession is crucial information that will impact Plaintiffs' ability to seek redress in their civil suit and may reduce the likelihood of obtaining relief on their civil claims.  As in

---

[20]*Chrissy F. v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 851 (5th Cir. 1991).

[21]*Id.* at 845.

[22]*Id.* at 851.

*Chrissy F.*, Plaintiffs' right of access to the courts also was violated when Carmadelle allegedly failed to report the allegations of sexual abuse against John Doe.

The conduct alleged by Plaintiffs, if proven, would effectively block their access to the courts.  In addition, the Court finds that reasonable state actors would have understood that the concealment of evidence and the failure to report sexual abuse allegations would violate Plaintiffs' First Amendment right of access to the courts.  Thus, Carmadelle and Dubois are not entitled to qualified immunity on Plaintiffs' First Amendment claim.

### 2. Fourteenth Amendment Equal Protection "Class of One" Claim

Plaintiffs contend that the actions of Carmadelle and Dubois violated Plaintiffs' Fourteenth Amendment right of Equal Protection.  Plaintiffs assert a "class of one" claim, arguing that their complaint would have been handled differently had Dantin not been connected to Carmadelle and Dubois.

The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike.[23]  The Supreme Court has held that a plaintiff may raise a cause of action under the Equal Protection Clause of the Fourteenth Amendment on behalf of a "class of one" even if the plaintiff does

---

[23]*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

13

not belong to a protected class or group.[24]   In order to assert a claim for a "class of one," a plaintiff "must allege that an illegitimate animus or ill-will motivated his intentionally different treatment from others similarly situated and that no rational basis existed for such treatment."[25]

The Fifth Circuit has rarely extended "class of one" claims beyond the context of zoning land use and assessment.[26]   In the Fifth Circuit case of *Shipp v. McMahon,* the plaintiff asserted a "class of one" claim arising out of the police context.[27]   The Plaintiff in *Shipp* argued that she was treated differently from other domestic violence victims because her mother-in-law, a deputy in the police department, intentionally influenced the level of protection that the plaintiff received from the police against the plaintiff's abusive husband.[28]

The Fifth Circuit in *Shipp* found that while there is no general constitutional right to police protection, the state cannot

---

[24]*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[25]*Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds*, *McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002) (en banc).

[26]*See Nance v. New Orleans & Baton Rouge Steamship Pilots' Ass'n*, 174 F. App'x 849, 854 (5th Cir. 2006).

[27]*Shipp*, 234 F.3d at 916-17.

[28]*Id.*

14

discriminate in providing police protection.[29]  However, although the Fifth Circuit recognized that the police cannot discriminate in providing protection, it ruled that the defendants were entitled to qualified immunity because the "class of one" claim was not clearly established in the police context at the time of the alleged violation.[30]

The Court finds that Carmadelle and Dubois are entitled to qualified immunity on Plaintiffs' "class of one" claim because the right was not clearly established at the time of the alleged constitutional violation.  Even though the Supreme Court has recognized a "class of one" claim, the Fifth Circuit has primarily confined this right to the land use and assessment context.[31]  The only Fifth Circuit case to discuss "class of one" claims in the police context was *Shipp*, which involved allegations of discriminatory police protection.

In the instant case, Plaintiffs have not alleged that Carmadelle and Dubois discriminated against them in failing to provide police protection.  In fact, Plaintiffs concede that Dantin

_____

[29]*Id.* at 916.

[30]*Shipp v. McMahon*, No. 02-30420, 54 F. App'x 413, 2002 WL 31718085, at *2 (5th Cir. Nov. 7, 2002) (noting that neither the Supreme Court nor the Fifth Circuit had extended "class of one" claims beyond the land use and assessment context as of 1996).

[31]*See Nance*, 174 F. App'x at 854.

was arrested following his confession.  Rather, Plaintiffs allege that Carmadelle and Dubois treated them differently in investigating their complaint and in preserving evidence.

Plaintiffs' "class of one" claim clearly was not established at the time of the alleged violation.  As a result, Carmadelle and Dubois are entitled to qualified immunity on Plaintiffs' Equal Protection claim.

### 3. § 1983 Civil Conspiracy Claim

Plaintiffs allege that Carmadelle, Dubois, and Dantin are liable for civil conspiracy pursuant to § 1983. An action for conspiracy may be brought under § 1983.[32] "A private party may be held liable under § 1983 if he or she is a 'willful participant in joint activity with the State or its agents.'"[33] In order to assert a claim for civil conspiracy under § 1983, a plaintiff must establish (1) an actual violation of a right protected under § 1983 and (2) an agreement between the private and public defendants to commit an illegal act.[34] An agreement to commit an illegal act may

---

[32]*Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983).

[33]*Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *see also Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting [under the color of state law] for purposes of § 1983 actions.").

[34]*Id.*

16

be proved by indirect or circumstantial evidence.[35]

Here, Plaintiffs have sufficiently pled a civil conspiracy claim under § 1983 because they have alleged an actual violation of their First Amendment right of access to the courts. As evidence of an agreement between Defendants to violate Plaintiffs' constitutional rights, Plaintiffs raise several instances in which Defendants allegedly attempted to cover up Dantin's misconduct. Specifically, Plaintiffs allege that Carmadelle failed to report Dantin's sexual misconduct and that Dubois initially accused Plaintiffs of lying. Furthermore, Plaintiffs allege that Dubois allowed Carmadelle to be present during Dantin's interrogation, which Carmadelle disrupted by claiming a heart attack. Plaintiffs claim that Carmadelle and Dubois attempted to cover up Dantin's misconduct because Dantin was a long-time friend of Dubois and the boyfriend of Carmadelle's mother.

The Court finds that these facts are sufficient to allege an agreement between Defendants to cover up Dantin's alleged misconduct. In addition, Carmadelle and Dubois are not entitled to qualified immunity because the Fifth Circuit has recognized a claim for civil conspiracy, which, if proven, was clearly established at the time of Dantin's arrest.[36] Presuming that Plaintiffs'

---

[35]*Mack v. Newton*, 737 F.2d 708, 711 (5th Cir. 1986).

[36]*See Ryland*, 708 F.2d at 974.

allegations are true, the Court also finds that Defendants' actions were not objectively reasonable.  Accordingly, Defendants' motion to dismiss Plaintiffs' civil conspiracy claim is denied.

### B. The Town of Grand Isle's Municipal Liability

Plaintiffs have filed claims against the Town of Grand Isle for municipal liability.  In *Monell v. Department of Social Services*, the United States Supreme Court held that local municipalities are "persons" subject to liability under § 1983.[37]

Imposition of § 1983 liability against a municipality is appropriate in the limited circumstance of when a constitutional deprivation is *caused* by the *execution* of a *policy or custom* of the municipality.[38]  "This requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[39]  In other words, respondeat superior does not apply to municipal liability

---

[37]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[38]*Bowen v. Watkins*, 669 F.2d 979, 989 (5th Cir. 1982) (citing *Monell*, 436 U.S. at 694).

[39]*Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

under § 1983.[40]  Simply said, "the unconstitutional conduct must be *directly* attributable to the municipality through some sort of [official policy]."[41]

An "official policy" is (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority, or (2) a persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated policy is so common and well-settled as to constitute a custom that fairly represents the entity's policy.[42]  The municipal policy or "official policy" requirement may be met "when the appropriate officer or entity promulgates a generally applicable statement of policy and the

---

[40]*See Monell*, 436 U.S. at 664 n.7.  A lawsuit against a government official in his official capacity is the equivalent of an action against the governmental entity he serves. *Ashe v. Corley*, 992 F.2d 540, 541 n.1 (5th Cir. 1993) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, a defendant found liable in his official capacity faces no personal liability. *Burge*, 187 F.3d at 466-67. Rather, any judgment rendered against the defendant in his official capacity is in effect a judgment against the entity he serves. *See id.* And given that the qualified immunity defense is unavailable to a governmental entity, a defendant sued only in his official capacity likewise cannot avail himself of the defense. *Id.*

[41]*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[42]*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

subsequent act complained of is simply an implementation of that policy."[43]

Because a municipality necessarily acts through its agents, the policy at issue must be set by a "policy maker," *i.e.*, the government's lawmakers, "or by those whose edicts or acts may fairly be said to represent official policy."[44]  When an official has final authority in a matter involving the selection of goals or of the means of achieving goals, his choices represent governmental policy.[45]  Whether a particular official is a policy maker is a question of state law.[46]  On the policy making inquiry, the court's task is to "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue."[47]

Given that municipal liability is imposed pursuant to execution of a policy or custom, a single, isolated

---

[43]*Burge*, 187 F.3d at 471 (quoting *Bryan Cnty. Comm'r v. Brown*, 520 U.S. 397 (1997) (Souter, J., dissenting)).

[44]*Id.* at 468 (quoting *Monell*, 436 U.S. at 694; *McMillian v. Monroe Cnty, Ala.*, 520 U.S. 781, 784-85 (1997)).

[45]*Id.* (citing *Schneider v. City of Atlanta*, 628 F.2d 915, 920 (5th Cir. 1980); Schnapper, *Civil Rights Litigation After Monell*, 79 Colum. L. Rev. 213, 213-21 (1979)).

[46]*Id.* (citing *McMillian*, 520 U.S. at 786).

[47]*Burge*, 187 F.3d at 468 (citing *McMillian*, 520 U.S. 781).

unconstitutional action by "rogue" employees of the municipality almost never will trigger municipal liability under §1983.[48] However, a plaintiff may establish a custom or policy based on a single isolated decision made in the context of a particular situation if the decision was made by an authorized policy maker in whom final authority rested regarding the action ordered.[49]  In sum, municipal liability under § 1983 requires proof of three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom, *i.e.*, causation.[50]

Before addressing Plaintiffs' *Monell* claim, the Court must determine who is the official policy maker under Louisiana law regarding the preservation of evidence.  Turning to Louisiana law, "[t]he chief of police, an elected official, is responsible for law enforcement in the municipality and is charged with the enforcement

---

[48]*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989)).

[49]*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996)).

[50]*Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).

of all local ordinances and applicable state laws."[51]  Thus, under Louisiana law, the chief of police is the chief law enforcement officer of a municipality.[52]  Pursuant to Louisiana law, Dubois qualifies as an official policy maker for preservation of evidence because he is the Chief of Police for the Town of Grand Isle.  As a result, policies adopted and promulgated by Dubois are "official" for purposes of § 1983.

The Court finds that Plaintiffs have pled sufficient facts to state a *Monell* claim based on Dubois' conduct as an official policy maker.  Although Plaintiffs do not use the words "custom" or "policy" in their complaint, the complaint does identify the Town of Grand Isle as a defendant and indicates that Dubois was the Chief of Police for the Grand Isle Police Department and responsible for ensuring compliance with the law.  In addition, the complaint states that Dubois acted with deliberate indifference to Plaintiffs' constitutional rights.  These facts are sufficient to plead a claim for municipality liability under *Monell*.

The allegations in the complaint suggest that Dubois, in his capacity as chief of police, established an official policy of

---

[51]*Dugas v. City of Breaux Bridge Police Dep't*, 99-1320 (La. App. 3 Cir. 2/2/00); 757 So.2d 741, 743 (citing La. Rev. Stat. § 33:423).

[52]*See id; see also Cogswell v. Town of Logansport*, 321 So.2d 774, 778 (La. Ct. App. 2d. Cir. 1975); La. Atty. Gen. Op. No. 97-484, Dec. 22, 1997.

destroying and concealing confessions given that he was the official responsible under state law for preserving Dantin's confession.[53]   While it is highly unlikely that this conduct is sufficient to place *Monell* liability on the Town of Grand Isle, this alleged conduct is sufficient to survive a motion to dismiss.[54]

## IV.   CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 34)** filed by Defendants, the Town of Grand Isle, David Carmadelle, and Euris Dubois is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to Plaintiffs' "class of one" Equal Protection claim. The motion is denied with respect to Plaintiffs' First Amendment, civil conspiracy, and *Monell* claims.

This 16th day of May 2014.

_____

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[53]*See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

[54]*See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (holding that federal courts cannot impose a pleading requirement more stringent in *Monell* cases than that imposed by Federal Rule of Civil Procedure 8(a)).