UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JANE DOE, Individually and on behalf of her minor son, JOHN DOE** | * | **CIVIL ACTION** |
| | | **NO. 2011-467** |
| **VERSUS** | * | |
| **JERRY DANTIN, THE TOWN OF GRAND ISLE, DAVID CARMADELLE and EURIS DUBOIS** | * | **SECTION "A" JUDGE ZAINEY** |
| | | **MAG. 1** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF GRAND ISLE, DAVID CAMARDELLE and EURIS DUBOIS**

MAY IT PLEASE THE COURT:

Plaintiffs, Jane Doe and her minor son John Doe, file this supplemental memorandum for the purpose of opposing the Fed. R. Civ. P., Rule 56 Motion for Summary Judgment filed by The Town of Grand Isle, David Camardelle and Euris Dubois (the Grand Isle defendants), (Rec. Doc. 82). Based on new evidence obtained from the Jefferson Parish District Attorney's office on June 3, 2015, this Court instructed plaintiffs to file the instant pleading. (Rec. Doc. 106).

Undersigned counsel was first given access to the Jefferson Parish District Attorney's file in the matter of *The State of Louisiana v. Jerry Dantin*, 24th JDC, #10-4101, Div. J on the afternoon of June 2, 2015. In reviewing the DA's file and speaking with the DA's representative, Chris Cox, undersigned counsel was provided six (6) cassette tapes containing statements taken by the DA's Chief Investigator, Vincent Lamia and assistant DA, Margaret Haye, on September 28, 2010. The statements were given by: Donald Kruger, Brandon Lofton, Euris Dubois, Stacey Eschete, David Camardelle, and Peggy Chighizola bearing the date 9-28-10. Aside from David Camardelle, all

of the witnesses from whom statements were taken were employees of the GIPD and present at the police station on April 6, 2010.  The Declaration of Scott Newnam, which authenticates the reproduction of these statements, is attached hereto as Exhibit 6, and a copy of the CD containing these statements is marked as Exhibit 7, and is being manually filed with the Court.

It is undisputed among counsel in this matter that no attorney was aware of the existence of these cassette tapes before June 2, 2015.

What is initially striking about listening to these statements is that not a single witness can remember what Jerry Dantin admitted to when he made the admission that resulted in his arrest for the sexual battery of John Doe.  This is understandable for two of the witnesses (Lofton and Eschete) because there is no evidence that they were in the room at the time of Dantin's admission.  For a third witness, Assistant Chief Donald Kruger, it seems that he was not in the room, and only heard Dantin say that he did it, without any elaboration on *what* Dantin did.

For the remaining three witnesses (Dubois, Camardelle and Chighizola), it is literally unbelievable that none of the three could remember what Dantin admitted to, and they all were audibly uncomfortable during their respective statements when they had to explain why they didn't remember what Dantin said during his confession. (Exhibit 7).

It cannot reasonably be disputed that Dubois, Camardelle and Chighizola were circling the wagons for their friend, Jerry Dantin.[1]  Collectively, their statements support plaintiffs' conspiracy claims because none of these people, who were in the same room with Dantin when he made his incriminating statements, could remember what he said five months later, or at any later point.  This is simply not believable.  And their statements all stand in stark contrast to the statements of Jane Doe regarding what Dantin confessed to, as well as the documents prepared relative to Dantin's

---

[1] It is also clear that all three of these witnesses are related by blood or marriage to each other, and/or to Dantin's long-time live-in girlfriend, David Camardelle's mother, Anna.

2

arrest.

**1. The conflicting testimony and statements about the tape recorder**

The Grand Isle defendants' multiple stories surrounding Dubois' supposed attempts to record Dantin's confession on April 6, 2010 constitute compelling evidence from which a jury easily could conclude that Dubois simply did not want to record his friend, Jerry Dantin, confessing to having molested a child.

Jane Doe always has been consistent in her statements and testimony: that the GIPD tape recorders did not work because of the batteries. Much to the contrary, the Grand Isle defendants have been very inconsistent about *why* Dubois could not record Dantin's confession.

Dubois' first recorded statement about the arrest of Jerry Dantin was given to the DA's office on September 29, 2010, and is contained on the CD attached hereto as Exhibit 7. Dubois never addressed his supposed attempts to record the confession of Dantin at all during this statement.

The next time Dubois gives a recorded statement about the arrest of Dantin is under oath during a hearing on Jerry Dantin's motion to suppress in the state court criminal proceeding on February 1, 2011. (The transcript of the hearing is attached hereto as Exhibit 8).[2] During his testimony Dubois mentions only *one* tape recorder, and he says nothing at all about batteries. (Ex. 8, P. 12, ll. 6-17 and P. 32, ll. 16-20).

Dubois next gave testimony during the first criminal trial of Jerry Dantin on July 12, 2011. This was the very first time Dubois gave testimony about batteries, when it came to the tape recorder. First he testified that the batteries were dead, so Peggy Chighizola decided just to write down what Dantin was saying. (GI, Ex. F, P. 101, ll. 7-29). Moments later, Dubois testified that he

[2] Undersigned counsel also obtained this transcript from the DA's file, and provided it to all counsel.

actually had **two recorders**, and neither worked.  Then he testified that Ms. Chighizola "went back and got some batteries," but then she just decided to write everything down. (GI, Ex. F, P. 102, ll. 12-28).

Dubois next gave testimony during the second criminal trial of Jerry Dantin on September 22, 2011.  This time Dubois only mentions **one recorder**, and he says the "battery didn't work and we couldn't get it going." (GI, Ex. G, P. 90, ll. 5-8).

Dubois next gave testimony during the first phase of his deposition in the case *sub judice* on March 20, 2015.  Regarding the tape recorder, Dubois first testified that he tried to record Dantin's confession, but the recorder did not work.  He then testified in response to a very specific question that there was one tape recorder.  Then, when asked if he ever testified that there was a second tape recorder, he testified that there could have been.  He then testified that neither of them worked. (Dubois depo, Vol. I, Ex. 3, P. 88, l.6 through P. 89, l. 19).  Notably, Dubois did not mention batteries.

Dubois next gave testimony during the second phase of his deposition in the case *sub judice* on March 30, 2015.  When pressed about the tape recorder in the second part of his deposition, Dubois then testified that they put new batteries in *both* recorders, but then backtracks and says: "I know one for sure that we did try it with the batteries." (Dubois depo, Vol. II, Ex. 4, P. 33, l.2 through P. 34, l. 23).

To undersigned counsel's knowledge, the only time David Camardelle was asked about the tape recorder was during his deposition in this case on March 3, 2015.  All he remembered was Dubois playing with the tape recorder, and the tape recorder being broken.  He did not remember anything about a second recorder or a problem with the batteries. (Camardelle depo, Ex. 2, P. 105, l. 8 through P. 107, l. 4).

## 2. The significance of the statement of Peggy Chighizola

Peggy Chighizola was the long-time secretary to police chief, Euris Dubois, as she was to Grand Isle police chiefs before Mr. Dubois.[3]  At the risk of being dramatic, part of the statement given by Ms. Chighizola to the DA's investigator is nothing short of a bombshell.

The sequence of events Ms. Chighizola gives is the opposite of what Dubois has claimed. Where Dubois has testified that Ms. Chighizola first tried to record Dantin's statement unsuccessfully, then tried to write it; Ms. Chighizola stated that she tried to write it first, but that Dantin was speaking "a little fast," and she stated: "I can't write this fast. I need a recorder."

And while the sequences given by Dubois and Ms. Chighizola are inconsistent, this is not the bombshell. The bombshell occurs when Ms. Chighizola describes what happens after she went back to her office to get batteries for the recorder. At 2:19 of her statement, Ms. Chighizola states:

> "I don't remember whether it was the chief or the assistant chief
> came in and said 'Never mind, you don't need to go back.'"[4]

First and foremost, this statement by Peggy Chighizola undoubtedly supports what plaintiffs have contended all along: Dubois (and implicitly Camardelle) did not want to record the incriminating confession given by Jerry Dantin. And before Ms. Chighizola could get back to the chief's office and put batteries in the recorder to record Dantin's confession, she was told not to come back into the chief's office where the "interrogation" was taking place.  Dubois' entire act with the tape recorder not working was a quickly-contrived plan to not record the confession.

---

[3] Unfortunately, Ms. Chighizola died in an accident while out of the Country in February of 2015.

[4]  Although the taped statement has been properly authenticated for purposes of this motion, Ms. Chighizola's statement also would be admissible at trial under FRE 801(d)(2)(D).

### 3. The liability of David Camardelle

Based on questions asked and statements made by the Court during the Pretrial Conference in this matter on May 27, 2015 regarding the liability of David Camardelle, plaintiffs feel compelled to address this issue further.

Initially, as it relates to David Camardelle, plaintiffs' respectfully aver that this Court should deny the instant motion on the same legal bases that it denied these defendants' 12(b) motion:

> The Court finds that Defendants Carmadelle and Dubois are not entitled to qualified immunity on Plaintiffs' First Amendment claim. Pursuant to *Ryland, Crowder,* and *Chrissy F.,* Plaintiffs' First Amendment right of access to the courts was clearly established at the time of the alleged violation.
>
> As in *Ryland* and *Crowder,* Plaintiffs allege that state actors, Carmadelle and Dubois, intentionally delayed and interfered with their right to bring a civil suit for damages by concealing evidence of Dantin's confession. Moreover, Dantin's alleged confession is crucial information that will impact Plaintiffs' ability to seek redress in their civil suit and may reduce the likelihood of obtaining relief on their civil claims. As in *Chrissy F.,* Plaintiffs' right of access to the courts also was violated when Carmadelle allegedly failed to report the allegations of sexual abuse against John Doe.
>
> The conduct alleged by Plaintiffs, if proven, would effectively block their access to the courts. In addition, the Court finds that reasonable state actors would have understood that the concealment of evidence and the failure to report sexual abuse allegations would violate Plaintiffs' First Amendment right of access to the courts. Thus, Carmadelle and Dubois are not entitled to qualified immunity on Plaintiffs' First Amendment claim.

*Doe v. Dantin*, 2014 WL 2045344, at p. 4 (E.D. La. 2014)

Similarly, this Court articulated a well-reasoned basis for deciding that the plaintiffs articulated claims against Camardelle for conspiracy under 42 U.S.C. § 1983.

> Here, Plaintiffs have sufficiently pled a civil conspiracy claim under § 1983 because they have alleged an actual violation of their First Amendment right of access to the courts. As evidence of an agreement between Defendants to violate Plaintiffs' constitutional rights, Plaintiffs raise several instances in which Defendants allegedly attempted to cover up Dantin's misconduct. Specifically, Plaintiffs allege that Carmadelle failed to report Dantin's sexual misconduct and that Dubois initially accused Plaintiffs of lying. Furthermore, Plaintiffs allege that

> Dubois allowed Carmadelle to be present during Dantin's interrogation, which Carmadelle disrupted by claiming a heart attack. Plaintiffs claim that Carmadelle and Dubois attempted to cover up Dantin's misconduct because Dantin was a long-time friend of Dubois and the boyfriend of Carmadelle's mother.
>
> The Court finds that these facts are sufficient to allege an agreement between Defendants to cover up Dantin's alleged misconduct. In addition, Carmadelle and Dubois are not entitled to qualified immunity because the Fifth Circuit has recognized a claim for civil conspiracy, which, if proven, was clearly established at the time of Dantin's arrest. Presuming that Plaintiffs' allegations are true, the Court also finds that Defendants' actions were not objectively reasonable. Accordingly, Defendants' motion to dismiss Plaintiffs' civil conspiracy claim is denied.

*Doe v. Dantin*, 2014 WL 2045344, at p. 6 (E.D. La. 2014)

Mr. Camardelle has been wholly untruthful about what he heard Dantin admit on April 6, 2010. Mr. Camardelle was in the room and just feet away from Dantin when he heard Dantin confess to having John Doe rub cream on his penis and then stick his fingers in Dantin's anus. Indeed, these grotesque admissions by Dantin are what caused Camardelle to have an emotional breakdown. Moreover, Dantin said nothing about a "rash" when he confessed on April 6, 2012, and it is undisputed that the word "rash" does not appear in *any* of the police documents (GIPD or JPSO) relative to Dantin's arrest. Yet in his very first statement given to Mr. Lamia of the DA's office, Camardelle engaged in this fabricated story about a "rash" in order to protect his friend, Dantin. (Camardelle statement on 9-28-10, Exhibit 7). But then at certain times, Camardelle has not mentioned the rash, and in fact, did not remember it when he was deposed in this case. (see original opposition memorandum for details on when Camardelle gave "rash" testimony.). A jury could very well conclude that Camardelle's lapses in memory about the "rash" were prompted by the fact that the whole "rash" defense was fabricated.

What is also noteworthy and significant is that throughout his various statements and testimony, Camardelle repeatedly uses the self-serving adage that he had to "do the right thing." In

fact, Camardelle himself repeatedly references his position as mayor with respect to having to do the right thing by having charges brought against Dantin when he claims that Jane Doe just wanted to leave Grand Isle. Of course, none of this is true, but it does evince the fact that Camardelle was only able to engage in this investigation and resulting conspiracy to cover it up because of his position as mayor of Grand Isle. Dubois admitted that Camardelle's position as mayor and his relationship to Dantin was the only reason Camardelle was permitted to pick up Dantin and be in the room for the interrogation. (Dubois depo, Vol. I, Ex. 3, PP. 77-78) and (Dubois depo, Vol. I, Ex. 3, P. 83, ll. 12-18).

With respect to the constitutional rights of John Doe and Jane Doe, it is beyond dispute that Camardelle should have at least known the following facts:

1. His police chief was not a trained police officer;

2. His police chief should not have been conducting felony investigations;

3. His police chief had no training or experience in how to handle sex crimes;

4. His police chief should not have gotten involved in the investigation of his close friend of over 40 years;

5. His police chief should have immediately turned this investigation over to JPSO, who had officers specially trained in how to handle sex crimes;

6. Jane Doe should not have participated in the interrogation of Dantin;

7. Camardelle should not have been allowed to pick up Dantin during which he admittedly took Dantin to his houseboat and discussed the allegations of Jane Doe;

8. Camardelle should not have been allowed to be present for the interrogation of Dantin;

9. Camardelle should not have lied to the DA investigator about not hearing what Dantin said in his confession;

10. Camardelle should not have fabricated, or agreed to a fabricated story, about a "rash" that never was mentioned by Dantin, nor referenced in any of the documents referencing his confession on April 6, 2010;

11. Camardelle should not have lied under oath about these things.

The United States Fifth Circuit Court of Appeals has held that a public official may be held liable if he violated constitutional or statutory rights that were clearly established at the time he acted such that a reasonably competent official should have then known the rules of law governing his conduct, *unless* the official pleads and proves in his defense extraordinary circumstances by virtue of which he neither knew nor should have known of the relevant legal standard. *Thomas v. Sams,* 734 F.2d 185, 190, (5th Cir. 1984) *citing Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982).

In the *Thomas* case, Eristus Sams was the mayor of Prairie View, Texas, and he also served as an *ex officio* magistrate and municipal judge. The city was embroiled in a dispute with Texas A&M University about the placement of a sewer line. The short version is that Mayor Sams signed a criminal complaint against Dr. Alvin Thomas, the president of the university, and then, in his capacity as magistrate/judge, Sams issued a warrant for the president's arrest, and had Dr. Thomas arrested. Dr. Thomas sued Sams and the City of Prairie View. After a bench trial finding in favor of Dr. Thomas, the Fifth Circuit affirmed in part, reversed and remanded in part, all in favor of Dr. Thomas.

In its detailed analysis and opinion, one passage is particularly applicable to David Camardelle's conduct in the case at bar: "Sams did not choose to present the complaint to an impartial intermediary. He deliberately avoided doing so, despite the availability of state judges and justices of the peace who had authority to sign the warrant." *Thomas,* 734 F.2d at 191, (5th Cir. 1984).

Similarly, Camardelle very well knew that this matter immediately could have, and should have, been turned over to JPSO. Camardelle testified that if any GI police chief he has

9

dealt with thought he could not handle something, he would call JPSO. (Camardelle depo, Ex. 2, PP. 45-46).

Camardelle cannot reasonably argue that he and Dubois were "impartial" in this investigation because of their close and long-standing ties to the suspect, Jerry Dantin. And there was a simple alternative: let the JPSO handle the investigation once the initial complaint was taken. But Camardelle did not do so. And for that and everything that followed, he should have to defend himself at trial.

## CONCLUSION

For all of the foregoing reasons, the Grand Isle defendants' motion should be DENIED.

**RESPECTFULLY SUBMITTED,**

 /s/ Richard C. Trahant
**RICHARD C. TRAHANT (LSBA 22653), T.A.**
**T. PETER BRESLIN (LSBA 3436)**
ATTORNEYS AT LAW
2908 Hessmer Ave.
Metairie, LA 70002
(504) 780-9891
(504) 780-7741 fax
trahant@trahantlawoffice.com
tpb@tpbreslinlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

None

/s/ Richard C. Trahant