UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE DOE, individually and
on behalf of her minor son,　　　　　　　CIVIL ACTION
JOHN DOE

VERSUS　　　　　　　　　　　　　　　　　　NO: 11-467

JERRY DANTIN, ET AL　　　　　　　　　　　SECTION: "A" (1)

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 82)** filed by defendants David Camardelle, Euris Dubois, and the Town of Grand Isle. Plaintiffs, Jane Doe, and her minor son, John Doe, oppose the motion.[1] The motion, set for hearing on May 1, 2015, is before the Court on the briefs without oral argument.[2] For the reasons that follow, the motion is **GRANTED**.

### I. BACKGROUND

This case concerns an alleged cover-up by the mayor of Grand Isle, the chief of police of Grand Isle, and the Grand Isle Police Department / Town of Grand Isle in investigating a possible felony. Defendant David Camardelle ("Camardelle") is the mayor of the Town

---

[1] Plaintiffs identify themselves by these pseudonyms in order to protect their identities given that this case concerns allegations of child molestation. All Defendants are aware of Plaintiffs' true identities.

[2] The Court has received the supplemental briefing from both parties.

1

of Grand Isle and a neighbor of John Doe's father. At the time of the incident, defendant Jerry Dantin ("Dantin") had been dating Camardelle's mother. Plaintiffs allege that on March 30, 2010, Jane Doe's son, John Doe, informed her that Dantin had sexually molested him by allowing him / instructing him to put cream on Dantin's penis and in Dantin's anus. In response, Jane Doe told John Doe's father about the sexual molestation. John Doe's father called Camardelle on March 31, 2010 to inform him of the allegations. Camardelle and John Doe's father discussed getting more information before taking further action, and John Doe's father agreed to give Camardelle until April 5, 2010, due to the upcoming Easter weekend.

Jane Doe and John Doe's father called Camardelle on April 5, 2010, but were unable to reach him. Jane Doe also called the Jefferson Parish Sheriff's Office that day to ask where to report a molestation, but she did not divulge any further details. On April 6, 2010, Jane Doe reported the matter in person to an officer at the Grand Isle Police Department. During this visit, Defendant Euris Dubois ("Dubois"), the Chief of the Grand Isle Police Department, allegedly accused Jane Doe of lying. Camardelle then arrived at the police station and apologized to Jane Doe for not returning her call. Camardelle offered to pick up Dantin and drive him to the station, which Dubois allowed. Upon his return, Dantin

2

was questioned by Dubois and Jane Doe. Camardelle was also present during the questioning.

During questioning, Dantin initially denied molesting John Doe, but eventually stated that he would tell the truth. At this point, Dubois read Dantin his *Miranda* rights. Dubois attempted to record Dantin's statement, but the tape recorder would not work. A second tape recorder also would not work. Dubois allegedly decided against getting new batteries and instead instructed his secretary to handwrite the statement. According to Plaintiffs, Dubois ordered Dantin to continue with his statement even after his secretary informed him that she could not keep up with the dialogue.

In his statement, Dantin confessed to molesting John Doe. He then threatened to kill himself. While Dantin was providing his statement, Camardelle allegedly began crying hysterically and complained of having a heart attack. An EMS was called to examine Camardelle while Jane Doe was left alone with Dantin. Camardelle did not suffer a heart attack.

Dubois did not have any video or audio of the confession. He did not ask Dantin to handwrite his confession nor did he present a written confession for Dantin to sign. The police report does state that Dantin confessed to molesting John Doe.

Dantin was arrested and transported to a hospital for suicide

3

watch.  He was then released into the custody of the Grand Isle Police Department for booking.  On April 7, 2010, Dantin was transferred to the Jefferson Parish Sheriff's Office.  On August 20, 2010, the District Attorney's Office instituted charges against Dantin for sexual battery of a juvenile.

In the criminal proceedings, Dantin filed a motion to suppress his oral confession, which the trial court denied.  The trial court's denial of Dantin's motion was subsequently upheld by the appellate court.  Dantin's criminal jury trial was held on July 13, 2011, resulting in a hung jury.  The matter was again tried to a jury on September 22, 2011, concluding with the same result.

On February 25, 2011, Plaintiffs filed the instant lawsuit against Camardelle, Dubois, Dantin, and the Town of Grand Isle, asserting constitutional violations under § 1983 and state law claims for intentional torts.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  A dispute about a

4

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

## II. DISCUSSION

In response to the instant motion, Plaintiffs have produced several record document items in an effort to create disputed issues of fact. However, the inquiry does not stop at whether there are disputed issues of fact; the contested issues must be material – a legal question. *Cf. McKee v. Brimmer*, 39 F.3d 94 (5th Cir. 1994). This Court finds that Plaintiffs have neither stated nor supported a claim for violation of Plaintiffs' First Amendment

right of access to the courts as held by the Fifth Circuit. A brief review of the relevant precedent supports this finding.

In *Ryland v. Shapiro*, the Fifth Circuit reversed and remanded a district court's decision to dismiss the plaintiffs' complaint claiming that the defendants had violated their right of access to the court. 708 F.2d 967 (5th Cir. 1983). The plaintiffs had alleged that their daughter was murdered by a prosecutor who, with the aid of another prosecutor, delayed the performance of an autopsy, falsified a coroner's report, and stymied a police investigation into the cause of her death. *Id.* at 969. As a result, they alleged that this "cover-up" of their daughter's murder prevented their filing of a wrongful death lawsuit for eleven months. *Id.* at 969-70. The Fifth Circuit, noting that access to the courts must be "adequate, effective, and meaningful," found that such alleged intentional interference with the related proceedings, if it is the cause of a delay in a plaintiff's <u>ability to file his civil suit</u>, may unconstitutionally impede a right of access to the courts. *Id.* at 974-75.

The Fifth Circuit refined its delineation of this right in *Foster v. City of Lake Jackson*, explaining that *Ryland* should not be read to give this right a broad scope.[3] 28 F.3d 425 (1994).

---

[3] In 1989, the Fifth Circuit opined that "the current contours of the right can best be described as nebulous." *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989).

*Foster* held that the right protects against officially-created barriers to filing an action on the underlying claim (*e.g.*, in *Ryland*, the wrongful death suit); it does not protect against an individual or entity's actions that might decrease the chance of success on the underlying action. *Id.* at 430. Thus, in *Ryland*, the alleged cover-up created by the defendants suggesting that the victim's cause of death was a suicide, not a homicide, created the possibility that the plaintiffs were deprived of their right to file a wrongful death suit for eleven months – the time between the incident and the exposure of the cover-up. *Id.* at 429-30 (citing *Ryland*, 708 F.2d at 972-73). In *Crowder*, the defendants' removal of the plaintiffs' property from Texas "destroyed or impaired the rightful jurisdiction of Texas courts over the seized items, thus interfering with [the plaintiffs'] ability to litigate ownership of the property in Texas." *Id.* at 430 (quoting *Crowder*, 884 F.2d at 813).[4] Contrast these with *Foster*, in which the Fifth Circuit accepted as true the allegations that the defendants (the city and

---

[4] In footnote 7 of its opinion, the *Foster* court reviewed a case from the Seventh Circuit that cited *Ryland* in finding a claim stated where the police officer defendants concocted a story prior to the plaintiffs' filing of a wrongful death lawsuit that "rendered hollow [the plaintiff's] right to seek redress." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *rev'd in part*, *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). The *Foster* court noted, "We question *Bell*'s reliance on *Ryland* for any broader definition of right of access than one encompassing the right to institute suit." *Foster*, 28 F.3d at 430, n.7.

several of its officials) concealed and suppressed evidence during discovery. *Id.* at 427, 430-31. Nonetheless, it found that no such right was clearly established even though "[a] public official who concealed or destroyed evidence, or gave false deposition testimony, surely would have known that was improper . . . ." *Id.* at 431.[5] Thus, the Fifth Circuit emphasized that even egregious conduct potentially affecting the outcome of a case does not violate the right of access unless that conduct can be shown to have also affected the actual filing of the underlying lawsuit.

The district courts of this circuit have applied this distinction in several cases. In *LaBarbara v. Angel*, the plaintiffs alleged that the police and university personnel conspired to cover up the fault of the university's head football coach in a car collision resulting in the death of the plaintiffs' son. 95 F. Supp. 2d 656, 659 (E.D. Tx. 2000). That court found that "[i]n order to establish damages on a denial of access claim, the cover-up must to some extent be successful in preventing the plaintiffs from instituting a suit – something this alleged cover-

---

[5] Although *Foster* addressed this matter in the context of a qualified immunity claim, and thus limited its review to the right as defined in 1985-88, it noted elsewhere that the right has continued to be defined in terms of the right to institute suit. *Foster*, 28 F.3d at 430, n.8. The Fifth Circuit has recently confirmed the limits of the right. *Smart v. Holder*, 368 F. Appx. 591, 593 (5th Cir. 2010)("We have not extended that right of access beyond the ability to institute suit; in this case, Smart was able to institute both his Title VII suit and the present claims.").

8

up failed to do." *Id.* at 665. The court went on to note that remedies for evidence abuses lie elsewhere. *Id.* In *Ellis v. Magee & Devereux*, the court dismissed the complaint, finding that although "courts in other circuits have expanded *Ryland*'s holding to cases where plaintiff had in fact filed suit but deceptive conduct on the part of government officials jeopardized plaintiff's chance of success at trial," the Fifth Circuit has only found the right of access "implicated when government officials take actions that either delay or block plaintiff's ability to file suit altogether." No. 00-3145, 2001 WL 167744, at *2 (E.D. La. Feb. 15, 2001). Finally, in *Clayton v. Columbia Cas. Co.*, the plaintiffs alleged that the defendant sheriff refused to disclose the identity of the officer involved in the shooting of the victim unless the plaintiffs agreed to not file a lawsuit. No. 11-0845, 2012 WL 2952531, at *8-9 (E.D. La. July 19, 2012). The court dismissed the claim, stating "[e]ven if Sheriff Graves refused to disclose Deputy Johnson's identity unless Deidra Clayton gave up her right to file a lawsuit over Jonathan Clayton's death, plaintiffs have not alleged that such conduct impaired or delayed their ability to file this lawsuit." *Id.* at 9.

The gravamen of Plaintiffs' allegations, and the focus of the evidence presented in response to the motion for summary judgment, is that Movants' actions made the prosecution of the criminal

9

charges and the litigation of the current claims more difficult. *See, e.g.*, (Rec. Doc. 87; Pls. Opp. at 2, 3, 15, 18). In other words, the issues of fact presented by Plaintiffs focus on actions that might have undermined their chance of success at trial. Such issues are not material to whether Movants interfered with their right to institute suit.

As held in *Foster*, the fact that one has committed a wrong, or has acted in a manner that is "deplorable . . . , indecisive, insensitive, inattentive, incompetent, stupid, and weak-kneed," is not sufficient to give rise to a constitutional violation. *Foster*, 28 F.3d at 430-31; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 465 (5th Cir. 1994)(Garwood, J., dissenting), *as quoted in Foster*, 28 F.3d at 431. Fifth Circuit precedent makes clear that a claim for violation of the First Amendment right of access cannot be supported in this case.

Turning to the remaining claims, it is well established that "every *Monell* claim requires an 'underlying constitutional violation.'" *Kitchen v. Dallas Cty., TX*, 759 F.3d 468, 483 (5th Cir. 2014) (citing *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("[I]nadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012)).

Similarly, a cognizable claim for conspiracy under § 1983 requires not only the existence of a conspiracy but also a related deprivation of civil rights. *Thompson v. Johnson*, 348 F. Appx. 919, 922 (5th Cir. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)); *Winn v. City of New Orleans*, 919 F. Supp. 2d 743, 756 (E.D. La. 2013) (quoting *Estate of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991) ("[I]n order to state a claim for conspiracy 'under § 1983, it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient.'"). Thus, the finding that Plaintiffs have failed to support a claim for a deprivation of the First Amendment right of access to the courts necessarily requires dismissal of these derivative claims as well.

The Court expresses no opinion as to any state law claims that might exist against Movants or as to the claims (also under state law) against Dantin. The Court will not exercise its supplemental jurisdiction over these claims. *See Brim v. ExxonMobil Pipeline Co.*, 213 F. Appx. 303, 305 (5th Cir. 2007) ("A federal court should decline to exercise jurisdiction over pendent state claims when all federal claims are disposed of prior to trial.").

IV. <u>CONCLUSION</u>

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc.**

**82)** filed by defendants David Camardelle, Euris Dubois, and the Town of Grand Isle is **GRANTED**.  All federal law claims against these defendants are **DISMISSED WITH PREJUDICE**.  The remaining claims against any defendants all arise under state law and are **DISMISSED WITHOUT PREJUDICE**.

This 17th day of June 2015.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE